FRONTIER MOBILE HOMES SALES,
Inc. *v.* Jessie R. TRIGLETH

73-227                                    505 S.W. 2d 516

Opinion delivered February 25, 1974

*W. H. Schulze*, for appellant.

*W. K. Grubbs Sr.*, for appellee.

FRANK HOLT, Justice. Appellee Trigleth purchased a new mobile home from appellant and executed a security agreement which was assigned with recourse by appellant to Westinghouse Credit Corporation. Approximately nine months later, Trigleth discontinued payments after notifying appellant of a revocation of the purchase agreement based upon non-conformity of the mobile home. Westinghouse filed a replevin action. Trigleth filed a cross-complaint seeking cancellation of the contract, a refund of his down payment to appellant Frontier and a recovery of his monthly payments made to Westinghouse, assignee of the security agreement. The trial court, sitting as a jury, cancelled the contract and awarded Trigleth judgment against appellant Frontier in the sum of $1,393.60 and against Westinghouse for the sum of $655.50, which was to be credited to Frontier. Appellee was also awarded a possessory lien on the mobile home. Frontier appeals from this judgment.

For reversal appellant first contends "[T]he court erred in permitting rescission of the contract where the mobile home was substantially in compliance with home as ordered, seller was making necessary correction of alleged defects, and buyer occupied home for a period of almost nine months." We first observe that the section of the Uniform Commercial Code controlling Trigleth's action in this case is Ark. Stat. Ann. § 85-2-608 (Add. 1961) which deals with revocation of acceptance. The committee comment 1. on that section indicates that the term rescission was purposely avoided. There it is said:

> **** The section no longer speaks of 'rescission,' a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort.

Appellant is essentially arguing that the mobile home conformed to the contract and revocation did not occur within a reasonable time. These issues are controlled by § 85-2-608 (1) (a) (2). The pertinent parts read:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; . . .
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Whether goods are non-conforming and a revocation of

acceptance was given within a reasonable time were questions of fact. *Dopieralla* v. *Ark. La. Gas Co.,* 255 Ark. 150, 499 S.W. 2d 610 (1973). For example, in *Dopieralla,* we held it was error to direct a verdict for the seller where the buyers had relied on the seller to supply an air-conditioner capable of cooling their place of business and continued to rely on the seller's assurances that the unit would be made to work before stopping payments 40 months later when it became apparent that the unit would never perform properly. In *Gramling* v. *Baltz,* 253 Ark. 361, 485 S.W. 183 (1972), we held it was error to direct a verdict for the seller when the buyer delayed revocation of acceptance for over two years, relying on the seller's continued assurances that the truck's engine would be made to run properly and continued attempts at repairs by the seller proved useless. What constitutes a non-conforming delivery is to be "determined within the framework of facts in each particular case." *Marine Mart, Inc.* v. *Pearce,* 252 Ark. 601, 480 S.W. 2d 133 (1972).

Similarly, a reasonable time for revocation depends on the "nature, purposes, and circumstances of such action." § 85-1-204 (2). That, too, is a question of fact and we will not reverse if substantial evidence exists. As in *Dopieralla* and *Gramling,* a consumer must not be penalized for his continued patience with a seller who promises to make good a non-conforming delivery.

We have long recognized that on appeal, in determining the sufficiency of the evidence, we need only to consider the testimony adduced by the appellee or that which is most favorable to him. *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S.W. 2d 689 (1935). We review the evidence in the case at bar. The agreement and the purchase of the mobile home required a change of living room furniture, the installation of an air-conditioner and ice maker refrigerator. When the appellant seller delivered the mobile home, Trigleth found incorrectly installed paneling, faulty wiring, loose sewer pipes, a refrigerator without an ice maker, no air-conditioner, only partial fulfillment of the agreed furniture replacement, and a hole in the front end of the home. Appellee promised to make corrections. The air-conditioner, which was later provided, never operated properly and during the summer months the temperature reached 110 degrees inside the home. Appellee

Trigleth's wife was pregnant and was told by her doctor that because of a blood disorder she would lose her baby unless she had the benefit of air-conditioning. She lost her baby. By October, 1971, (the purchase was in July, 1971) Trigleth had his attorney notify appellant Frontier that he was retaining the option of cancellation of the contract unless the necessary repairs were made as promised such as the immediate repair of the hole in the front end causing water to leak inside, the promised furniture, replacement of tiles, repair of the oven which had never functioned properly, and the delivery of an ice maker refrigerator. It was agreed that since the weather was cooler, the repair of the air-conditioner could be made in the forthcoming spring. On March 27, 1972, appellee Trigleth, through his attorney, notified the appellant Frontier that he was cancelling the contract due to Frontier's unfulfilled promises as to the deficiencies. Trigleth demanded a return of his payments and claimed a lien on the home as security. As of that date, the air-conditioner was not fixed, the leaking hole remained, the oven was inoperative, an ice maker refrigerator was never delivered, and the floor tiles were defective. A copy of the letter was forwarded to Westinghouse. The Trigleths moved out and discontinued use of the mobile home.

Appellant Frontier presented some evidence contradicting Trigleth; however, as indicated, in *Baldwin* v. *Wingfield, supra,* we need only look to the appellee's evidence or that which is most favorable to him to determine if substantial evidence exists to support a verdict. We are of the view that the evidence is amply substantial in the case at bar to support the finding of the trial court, sitting as a jury, that the mobile home was a non-conforming product within the meaning of our code and that the revocation of acceptance occurred within a reasonable time.

Appellant's second contention for reversal is that the "court erred in granting judgment against third-party defendant, Frontier Mobile Home Sales, Inc., for refund of payments made by defendant, Trigleth, as the measure of damages is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, and there was no evidence of any damage introduced by Trigleth."

Appellant does not rely on the proper standard for computing damages here. The controlling code section is § 85-2-711 (1) and allows a buyer, *inter alia,* to recover so much of of the price as has been paid and § 85-2-711 (3) gives him a security interest on the price paid. The trial judge correctly set Trigleth's damages accordingly.

Appellant's final contention is that the trial court erred in not decreasing the judgment against appellant Frontier by the reasonable rental value of the mobile home for the nine months of occupancy by Trigleth. Since the issue is raised for the first time on appeal, we cannot now consider it.

Affirmed.